UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WALBROAD, INC. | CIVIL ACTION |
| VERSUS | NO. 24-1901 |
| FAMILY DOLLAR STORES OF LOUISIANA, LLC | SECTION "L" (5) |

## ORDER AND REASONS

Before the Court is Plaintiff Walbroad, Inc.'s ("Walbroad") Motion to Remand to State Court. R. Doc. 7. Defendant Family Dollar Stores of Louisiana, LLC ("Family Dollar") opposes the motion. R. Doc. 8. Walbroad replied. R. Doc. 9. After a review of the record, briefings, and applicable law, the Court rules as follows.

## I.      BACKGROUND

This case arises out of a breach of contract dispute. On or about January 30, 2018, Plaintiff Walbroad, LLC, owner of the property located at 5501 Crowder Blvd., New Orleans, Louisiana (the "Property"), allegedly entered into a written commercial lease (the "Lease") with Defendant Family Dollar. R. Doc. 1-4 at 1. Walbroad alleges that the lease term expired on June 30, 2023, and Family Dollar did not extend the lease. *Id.*

On December 19, 2023, Walbroad filed its Original Petition in Civil District Court for the Parish of Orleans ("Civil District Court"), alleging Family Dollar breached the Lease for failing to maintain and repair the Property. *Id.* Specifically, Walbroad alleges that Family Dollar failed to (1) repair damages to the side of the Property, (2) repair grates under the Property's canopy, (3) maintain the Property's dumpster area, (4) leave the Property "in a broom clean and in good repair," (5) repair the Property's security gate, and (6) remove an electrical surveyor. *Id.* at 1-2. It further alleges that it properly notified and made demands that Family Dollar cure these alleged

1

breaches of the Lease, but such demands were unsuccessful. *Id.* at 2. As a result, Walbroad sought a money judgment in an amount proven at trial for the required repairs it made on the Property, attorneys' fees, and interest. *Id.*

On March 5, 2024, Walbroad and Family Dollar began to engage in settlement negotiations via email when Walbroad sent a demand letter to Family Dollar. R. Doc. 7-3 at 6. Over the next few months, the parties were unable to reach an agreement, and Walbroad warned that it would amend its initial petition to incorporate new damages. *Id.* at 2. On May 3, 2024, Walbroad filed an Amended Petition alleging the previous facts and raising additional claims. R. Doc. 7-4. Walbroad newly alleges that Family Dollar breached its general duty to turn over the Property in a safe and secure manner. *Id.* at 2. It alleges that Family Dollar was placed into default during and after the Lease term expired, which Family Dollar has failed to cure. *Id.* at 1-2. As a result of Family Dollar leaving the Property in an unsafe manner, it alleges that the Property was vandalized and burglarized. *Id.* at 2. Thus, it alleges that the Property sustained significant damages which reduced the valuation of the Property and further seeks the difference between the value of the Property prior to the break-in and the lower value at which Property sold. *Id.* In its answer to both petitions, Family Dollar denies most of the allegations and asserts several defenses, including: (1) lack of notice, (2) estoppel, (3) the damages incurred resulted from Walbroad's own breach of the Lease, and (4) Walbroad failed to mitigate damages. R. Doc. 1-7 at 6-8; R. Doc. 7-5 at 1-2. It additionally submits a jury demand. *Id.* On July 30, 2024, Family Dollar removed the matter from Civil District Court on the basis of diversity jurisdiction.[1] R. Doc. 1.

---

[1] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332. Walbroad is a limited liability company deemed to be a citizen of Florida. R. Doc. 1 at 4. Family Dollar is a limited liability company deemed to be a citizen of Virginia. *Id.* Walbroad seeks damages greater than $75,000. *Id.* at 4-5.

## II.    PRESENT MOTION

Walbroad filed the instant motion to remand on August 20, 2024. R. Doc. 7. In its motion, Walbroad requests that the case be remanded back to the Civil District Court because Family Dollar's removal was untimely and thus improper. R. Doc. 7-1 at 4. While it concedes that the requirements for diversity jurisdiction are met in this case, Walbroad argues that Family Dollar was required to remove the matter within thirty days of receiving an email sent by Walbroad on May 3, 2024, which ended the settlement negotiations that began on March 12, 2024. *Id.* at 7-10. In this email, Walbroad attached its First Supplemental and Amending Petition ("Amended Petition") and provided Family Dollar with information on the additional damages it seeks. R. Doc. 7-3 at 1. More specifically, counsel for Walbroad stated in the body of the email:

> "[A]s for the additional damages therein, please see [the] attached offer my client received on the subject property prior to the break-in/theft/vandalism at $1,550,000. Due to the damages caused to the property, the property was sold at the great discounted price of $975,000." *Id.*

Walbroad alleges that this email qualifies as an "other paper" under 28 U.S.C. § 1446(b)(3) and makes it "unequivocally clear and certain" that Walbroad is seeking more than $75,000. R. Doc. 7-1 at 8. Thus, it is Walbroad's position that its May 3rd email triggered the 30-day removal period, and Family Dollar untimely removed the matter 87 days after receiving these "other papers." *Id.* at 9.

In opposition, Family Dollar argues that Walbroad's email does not meet the "unequivocally clear and certain" standard required to trigger the 30-day removal period. R. Doc. 8-1. Family Dollar notes that Walbroad never provided the exact amount in controversy in its email, and that it would have to "speculate or conduct [its] own additional investigation" to determine if the jurisdictional limit was met. *Id.* at 5. Alternatively, Family Dollar argues that even

if it had enough information regarding the amount in controversy, Walbroad's email "appeared to constitute mere posturing to attempt to pressure settlement," which does not trigger the removal period. *Id.* at 6-7. Instead, Family Dollar contends that the thirty-day removal period began on July 3, 2024, when Walbroad admitted in its discovery responses that "the good faith amount in dispute between [the parties] exceeds $75,000, exclusive of interests and costs." *Id.* at 8. Accordingly, Family Dollar argues that its notice of removal was timely filed on July 30, 2024.

In reply, Walbroad distinguishes the case law cited in Family Dollar's opposition as inapplicable to the facts at hand. R. Doc. 9 at 1-5. Additionally, Walbroad denies that its May 3rd email is a "sham" because it was not threatening or posturing for settlement purposes. It notes that this email ended the settlement negotiations and the attached amended petition was in no way "speculative and/or hyperbolic." *Id.* at 5-6.

## III.    APPLICABLE LAW

28 U.S.C. § 1441 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  Accordingly, a defendant may remove a case to federal court if the federal court would have had original jurisdiction over the action. "Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994)). The Fifth Circuit has explained that the removal statute should be strictly construed. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Any doubt concerning the basis of jurisdiction should be resolved in favor of remand. *Acuna v. Brown & Root*, 200 F.3d 335, 339 (5th Cir. 2000). Once a motion to remand has been filed, the

4

burden is on the defendant to prove, by a preponderance of the evidence, that federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

In general, a defendant who wishes to remove an action first filed in state court must file a notice of removal within thirty days of being served or provided with the initial pleading or being served with a summons, "whichever period is shorter." 28 U.S.C. § 1446(b)(1). If, however, the initial pleading does not state a case which is removable on its face, "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* at § 1446(b)(3). If the initial pleading states a case that cannot be removed solely because the amount in controversy does not exceed the diversity jurisdiction threshold, then "information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3)." *Id.* at § 1446(c)(3)(A). "The federal courts have given the reference to 'other paper' an expansive construction and have included a wide array of documents within its scope." *Romulus v. CVS Pharm., Inc.*, 770 F.3d 67, 78 (1st Cir. 2014) (quoting 14C *Wright & Miller, Federal Practice and Procedure* § 3731 (4th ed.)). Under § 1446(b)(3), "other paper" may include items such as deposition transcripts,[2] answers to interrogatories,[3] post-petition settlement demand letters,[4] and emails or correspondence between opposing counsel.[5]

## IV. DISCUSSION

The Defendant presents two reasons why remand should be denied in this case. The Court addresses each argument in turn.

---

[2] *S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 494 (5th Cir. 1996).
[3] *Chapman v. Powermatic, Inc*., 969 F.2d 160, 164 (5th Cir. 1992).
[4] *Addo v. Globe Life & Accident Ins. Co*., 230 F.3d 759, 762 (5th Cir. 2000)
[5] *Id*; *Credeur v. York Claim Serv.*, No. 13-cv-01367, 2013 WL 5935477, at *5 (W.D. La. Sept. 9, 2013).

### A. Whether Walbroad's May 3rd Email Meets the "Unequivocally Clear and Certain" Standard

In *Bosky v. Kroger Texas, LP*, the Fifth Circuit discusses the differing standards for removal based upon an initial pleading and removal based upon the receipt of subsequent pleadings or "other paper." 288 F.3d 208, 210 (5th Cir. 2002). Under § 1446(b)(1), the thirty-day time limit of the initial pleadings is triggered only when a pleading "affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *Id*. On the other hand, under § 1446(b)(3), the thirty-day time limit concerning the receipt of a subsequent pleading or "other paper" is triggered by receipt of information which is "unequivocally clear and certain." *Id.* A subsequent pleading or other paper does not meet the "unequivocally clear and certain" standard if the defendant must conduct "independent research to ascertain the amount in controversy." *Cole ex rel. Ellis v. Knowledge Learning Corp.*, 416 F. App'x 437, 440 (5th Cir. 2011). For example, "[o]ther paper describing injuries and other damages that seem likely to exceed the amount in controversy requirement, but which do no show unequivocally that the requirement is met, [is] insufficient to trigger the removal clock." *Darensburg v. NGM Ins. Co.*, No. 14-1391, 2014 WL 4072128, at *3 (E.D. La. Aug. 13, 2014).

At first instance, the Court notes that Walbroad's counsel does not state a specific amount in controversy in its May 3rd email. R. Doc. 7-3 at 1. The email does, however, reference the "additional damages" sought in Walbroad's attached Amended Petition, in which it specifically demanded "the difference between the value of the leased premises prior to the break-in and the current value of the same." *Id.* Further, the body of the email includes the initial offer amount of $1,550,000 that Walbroad received prior to the Property sustaining damages due to an alleged break-in as well as the amount the Property eventually sold for at $975,000. *Id.* A quick reference to the Amended Petition attached to the email and a simple mathematical calculation subtracting

these two numbers show that the jurisdictional amount for diversity had been met due to Walbroad alleging at least $575,000 in damages. Thus, the central inquiry the Court must determine is whether the information supplied in Walbroad's May 3rd email taken as a whole was sufficient to trigger the thirty-day removal period, or whether the additional step of requiring Family Dollar to calculate the alleged damages amounted to "independent research" that does not meet the "unequivocally clear and certain" standard as it is articulated in *Bosky*.

The Fifth Circuit has not yet addressed whether § 1446(b)(3) can be triggered by a simple calculation on the part of the defendant from information revealed by a plaintiff's "other papers" in the absence of a specific damages estimate. Other circuit courts, however, have directly faced the issue. For example, in *Romulus v. CVS Pharmacy, Inc.*, the First Circuit was tasked with deciding whether plaintiffs' email to defense counsel including estimates of their damages triggered the thirty-day removal period when all defendant had to do was multiply a few numbers to calculate the total amount in controversy. 770 F.3d at 75-77. After applying the same "unequivocally clear and certain" standard as the Fifth Circuit in *Bosky*, the court found that other paper will trigger § 1446(b)(3) if it "includes a clear statement of the damages sought or if the plaintiff's paper sets forth sufficient facts from which the amount in controversy can easily be ascertained by the defendant by simple calculation." *Id.* at 75. Relying upon case law from the Second and Ninth Circuits, the court reasoned that while defendants have no independent duty to investigate whether a case is removable, they "must still 'apply a reasonable amount of intelligence in ascertaining removability.'" *Id.* (quoting *Cutrone v. Mortg. Elec. Registration Sys., Inc.,* 749 F.3d 137, 143-45 (2d Cir. 2014)); *see also Kuxhausen v. BMW Fin. Servs. NA LLC,* 707 F.3d 1136, 1140 (9th Cir.2013) ("As we explain below, defendants need not make extrapolations or engage in guesswork; yet the statute 'requires a defendant to apply a reasonable amount of intelligence in

ascertaining removability.' Multiplying figures clearly stated . . . is an aspect of that duty." (citation omitted)).

Based on this rationale, the Court finds that Walbroad's May 3rd email triggered the applicable thirty-day removal period in this case, not its later discovery response on July 3, 2024. The information that Walbroad provided did not require Family Dollar to look beyond the email and its attachment for facts giving rise to removability. Family Dollar, like the defendant in *Romulus*, could have easily ascertained the jurisdictional amount had been met by simply subtracting the price at which the Leased Property sold from the initial offer received prior to the sustained property damage. As stated above, the calculated amount of $575,000 clearly exceeds $75,000. The Court further notes that its decision here is consistent with those of its sister courts facing similar facts. *See Doss v. Albertson's LLC*, 492 F.Supp.2d 690 (W.D. Tex. June 14, 2007) (granting motion to remand because defendants did not timely remove the case under § 1446(b)(3) as it waited more than 30 days after receipt of "other paper" that made it "unequivocally clear and certain" that plaintiff sought more than $75,000 due to a "simple computation [that] would show that this claim was for at least $317,408 in damages"); *Exceleron Software, Inc. v. TGEC Communications Co., LLC*, No. 05-2007, 2005 WL 3542566, at *3 (N.D. Tex. Dec. 23, 2005) (granting motion to remand because a "review of the Petition, a modicum of effort and a couple of simple mental calculations immediately reveal and *establish* that" plaintiff sought more than $75,000); *Medrano v. KLLM Transportation Servs., LLC*, No. 21-581, 2022 WL 17833284, at *7 (M.D. La. Aug. 30, 2022) (granting motion to remand because "an 'objective reading' of [p]laintiffs' [interrogatory response] 'aided by a modicum effort'" established plaintiffs sought more than $75,000). Accordingly, the May 3rd email was sufficiently unequivocal and clear to trigger the thirty-day removal period on that date, and Family Dollar failed to timely file its notice

of removal within the applicable timeframe.

### B. Whether Walbroad's May 3rd Email Failed to Trigger the Removal Period Because It Was a Sham

A post-complaint letter may be used as evidence to satisfy the amount-in-controversy requirements, so long as the letter is "not plainly a sham." *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000). In other words, "[s]ettlement demand letters evidence the amount in controversy insofar as they represent a plaintiff's actual valuation of her claims." *Marullo v. Dollar Gen. Corp.*, 2014 WL 3587879, at *2 (E.D. La. July 21, 2014) (citing *Cole v. Knowledge Learning Corp.*, 2009 WL 1269591, at *4 (E.D. La. May 6, 2009), *aff'd*, 416 F. App'x 437 (5th Cir. 2011)). A demand that constitutes "mere posturing" and "does not reflect the honest value of the case" does not trigger the removal period. *Russell v. Home State Cnty. Mut. Ins. Co.*, No. 03-1911, 2003 WL 22697179, at *2 (E.D. La. Nov. 10, 2003); *see also Guidry v. Dow Chem. Co.*, No. 19-12233, 2019 WL 4509490, at *1 (E.D. La. Sept. 19, 2019) (speculative and hyperbolic demand did not automatically trigger the removal period).

Family Dollar characterizes the May 3rd email as a demand that is plainly a sham and thus did not trigger the thirty-day removal period. It further argues that Walbroad has not offered any evidence linking damages sustained to the Property from the alleged break-in to the decrease in sales price. In support of its position, Family Dollar has cited *Addo v. Globe Life & Acc. Ins. Co.* The Fifth Circuit in that case considered whether a plaintiff's three-sentence demand letter constituted "other paper" that triggered the defendant's thirty-day removal clock. *Addo*, 230 F.3d at 762. The court concluded that the letter, which recited plaintiff's alleged injuries, computed the alleged special damages suffered, and then set out a final settlement demand, was not plainly a sham, explaining that there was "no indicia of posturing or lack of seriousness in the communication of [the] offer." *Id.*

Here, the Court finds that *Addo* militates against, rather than supports, Family Dollar's argument. Walbroad's stated damages are clearly based on the initial offer letter it received for the Property, which was also attached to the email. R. Doc. 9-1. Moreover, Walbroad went as far as to amend its initial petition to include the additional damages, indicating its sincerity in pursing this claim. Thus, it cannot be said that the amount in controversy ascertained in the May 3rd email appears to be unserious or mere posturing. While the Court acknowledges that there is some question as to whether Family Dollar played a role in the alleged damages to the property, this does not make the May 3rd email more likely to be a sham or change the fact that Walbroad has alleged the jurisdictional amount for diversity jurisdiction. *See Neyland-Jones v. Liberty Mut. Pers. Ins. Co.*, 2019 WL 6713416, at *3 (E.D. La. Dec. 10, 2019)  (finding that even though a jury may have found a lack of causation between the plaintiff's injuries and damages does not mean that the demand letter was a sham). Furthermore, the Court notes that there is some question as to whether the "not plainly a sham" rule even applies here, given that *Addo* specifically addresses the issue within the context of settlement only. In this instance, the May 3rd email cannot be considered a "demand letter" like the one in *Addo* because it was not threatening or posturing for settlement purposes. In fact, the email never even mentions the word settlement and solely references Walbroad's new Amended Petition seeking more damages. R. Doc. 7-3 at 1. Instead,  it appears that the email ended the negotiations between the parties and was a voluntary communication notifying Family Dollar that Walbroad intended to seek a higher amount in damages. *Id.* Accordingly, the Court finds there to be no basis for the May 3rd email to be considered a sham that failed to trigger the removal period.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Walboard Inc.'s Motion to Remand, R. Doc. 7, is **GRANTED**.

New Orleans, Louisiana, this 8th day of October, 2024.

_____
United States District Judge